ABIGAIL B. KILBURN & others *vs.* JOSHUA HOSMER & another, Trustees.

A testator devised the sum of $1,500 to trustees, to hold for the life of his daughter, to be applied to her support and maintenance, and the comfortable support, edu‑ cation, and maintenance of her family, and at her decease, said estate, or "what‑ ever remains of it," was to be distributed among her children. At the execution of the will, the daughter, being about twenty-nine years of age, and in good health, was living with her husband and three young children, but at the time the bill was brought, she had seven children. *Held,* that the trustees had a discretion in the disbursement of the fund, and were not bound to furnish the entire support of the daughter and her children, irrespective of the earnings of the husband and father.

BILL IN EQUITY by Abigail B. Kilburn, wife of William Kilburn, and their five minor children, who sue by their father as *prochein amy*, against the trustees under the will of Eden Baldwin, deceased, father of said Abigail. From the bill, answer, and agreed facts, it appeared that said Eden Baldwin died June 13, 1839, leaving a will, which was duly allowed August 8, 1839. Said will among other things, contained the following clause : " First I give, bequeathe, and devise, to Leonard Stone and Samuel Dadman, to be held in trust for the use of my daughters Seraph Sawyer and Abigail Kilburn as follows, namely," (after a like bequest for the use of Seraph Sawyer, not material to the present case,) " to the use of said Abigail, $1,500, to hold for the same sums and estate respectively, during the respective lives of each of the legatees

for whose benefit it is given, to be applied to their respective support and maintenance, and the comfortable support, education, and maintenance of their respective families, and whenever either of my said daughters shall decease, the estate so given to her, or whatever remains of it, shall be distributed among her children lawfully born and to be born, and to their heirs forever, each son to have twice as much as each daughter, and whenever the surviving daughter shall decease, whatever remains of what is so given to her, shall be distributed among her children upon the same terms and conditions to be to them and their heirs forever."

Said will also contained after the specific devises, a clause disposing of the testator's residuary estate, by which, after disposing of twelve shares of said residue to other children, it was devised as follows: " and one share each to said trustees for each of my said daughters, giving to each male legatee twice as much as to each female, which said property, said trustees are to hold, in the same manner, upon the same terms, and for the same purposes as that which has already been given to them." " And I further order and direct that said trustees, if they see fit, may sell and convey any part or portion of the real estate devised to them as aforesaid, if they think the interest of my children, or those interested in it, will be thereby promoted, or they may cause the timber to be disposed of and the land to be improved as they shall think most judicious, always behaving reasonably in the premises and studying the comfort and happiness of my said children."

Leonard Stone and Samuel Dadman, the trustees named in said will, accepted, entered upon, and continued to discharge said trusts until the fifth day of June, 1849, when, upon their petition, they were discharged, and Joshua Hosmer and John Sawyer 2d, the respondents, were appointed in their stead, and accepted and entered upon said trusts, and the former trustees paid into their hands the sum of $2,197,05 for the use of Abigail Kilburn, under the trusts of said will.

At the time the will was made, namely, October 23, 1835

nearly four years before the testator's death, said Abigail was about twenty-nine years of age, in good health, and the mother of three children, the oldest of whom was then eight years of age.

At the time this bill was brought said Abigail had seven children living, and the complainants claimed, that under the provisions of the will, the trustees were bound to pay over to said Abigail, sufficient funds for the comfortable support and maintenance of herself and children, and for their education, without regard to her or their earnings, or the earnings or resources of her husband.

The respondents claimed that the disbursement of the trust fund was to a great extent discretionary with them, and that some regard should be had, in the amounts paid over, to the earnings of the husband and family of said Abigail.

The trustees had not paid over sums sufficient for the support of said Abigail and her children, irrespective of their other resources and their earnings, and the earnings of said William Kilburn, and it was agreed that if the construction given by the court to the provisions of the will should require, the case should be sent to a master in chancery, to determine what sum, if any, ought to be paid over by said trustees, for the support of said Abigail and her family.

*D. Foster,* (*P. C. Bacon* with him,) for the complainants.

The only question in this case is, as to the construction of the bequest in the will of Eden Baldwin for the benefit of Abigail Kilburn and her family.

The complainants contend, that under the will, Abigail Kilburn is entitled; 1st. To her comfortable support and maintenance; 2d. To the comfortable support and maintenance of her minor children, who are her family; 3d. To their education, to an extent suitable to their condition and circumstances in life. And that these are to be furnished out of the trust fund without regard to the earnings of said Abigail and her children, her or their other resources, the earnings or resources of their father, William Kilburn; or the diminution of the principal of the fund.

Kilburn & others *v.* Hosmer & another, Trustees.

There are four other constructions of which this bequest is possibly susceptible.

1st. It might give the income of the fund to said Abigail for life, and divide the principal among her children on her decease.

2d. The fund might have been given to the trustees, to hold and pay over to the *cestui que trust,* so much of income or principal as would suffice, with her other resources, for the support of herself and family, leaving the rest to accumulate till her decease, and then to be distributed. *Sheldon* v. *Purple,* 15 Pick. 528; *Worcester* v. *Chapin,* 10 Met. 188; *Longley* v. *Hall,* 11 Pick. 120.

3d. It might have given to her for life, the income of the fund, and so much of the principal as from time to time shall be required to eke out the other resources of the family *White* v. *Woodberry,* 9 Pick. 137 ; *Rathbun* v. *Colton,* 15 Pick 487.

4th. The whole question of appropriation during the life of Abigail Kilburn, might have been intrusted to the discretior of the trustees.

But none of these were in the intention of the testator, who meant to devote this fund to the purpose he had in view, namely, the maintenance of his daughter and her family, and the education of her children ; this appears from the language of the will. *Crocker* v. *Crocker,* 11 Pick. 252; *Sargent* v. *Bourne,* 6 Met. 33. And this being clearly the testator's intent, the court will carry it into effect, whether judicious or not. Nor was it an unwise bequest under the circumstances, of the family to whom it was given. If the respondents cite cases like the following, where it has been held that a father, if able, is bound to support his minor children, although they have separate property ; *Andrews* v. *Partington,* 3 Bro. C. C. 60 ; *Hughes* v. *Hughes,* 1 Bro. C. C. 387 ; *Willes* v. *Rogers,* 6 Johns. 566 ; such are clearly distinguishable from the present.

*E. Washburn,* for the respondents.

Bigelow, J. It seems to us quite clear, that the testator, in making the bequest in trust, for the benefit of his daughter Abigail and her children, did not intend that their entire sup-

13*

port and maintenance should be derived from the trust fund created by him for their use, but that such sums only should be expended therefor, as the trustees in their discretion might deem just and proper.

The amount of the trust fund, taken in connection with the condition and circumstances of the daughter's family, is quite decisive on this point. The daughter, at the date of the will, was under thirty years of age, and her children were in early childhood and infancy. They were all likely to require support for a long period of time. The trust fund was wholly inadequate to furnish an entire support for the wife and children, and to educate the latter, without a large and constantly increasing encroachment on the principal sum, which, in all probability, would eventually lead to its entire consumption. It cannot be supposed that the testator contemplated any such result, because he carefully provides for the distribution of the trust fund after the decease of his daughter. Besides; it cannot be inferred, in the absence of any express declaration, that the testator intended to relieve the husband and father from all obligation to support his family during the existence of the trust fund. Such a construction would render the bequest a gift rather for the benefit of the husband than of his wife and children. Courts of equity are slow in giving such an interpretation to gifts in trust for the maintenance of children as to discharge the parent from his duty to furnish them with an adequate support. Formerly, if the parent were of ability to maintain the children, trustees were not allowed any sum expended by them for maintenance, even though it was expressly directed by the will; but in modern practice this rule has been modified, and courts will now in the administration of trusts, dispense with any reference to the father's ability to support his children, when the language of the will or other circumstances are very strong to indicate such intention on the part of the testator, or when the situation of the father and the amount of the trust funds are such as to justify such an administration of them. Willis on Trustees, 159, 160; *Hughes* v. *Hughes,* 1 Bro. C. C. 386, n.; *Andrews* v. *Partington,* 3 Bro. C. C. 60; *Maberley* v. *Turton,*

14 Ves. 499. There is nothing in the language of the will, or in the situation of the *cestuis que trust*, in the present case, to justify us in giving such an interpretation to the clause of the will creating the trust in question, as to relieve the father from his legal and moral obligation to furnish adequate support to his wife and children.

We think, too, there was a discretion vested by the terms of the will in the trustees, as to the expenditure of said funds. It was for them to judge of the amount necessary to the comfortable support of the *cestuis que trust*. It was made their duty by the express terms of the will to " study the comfort and happiness of the testator's children." This they could do, only by such an administration of the funds committed to their charge for the benefit of the daughter and her children, as would most conduce to this end.

We are therefore of the opinion, that the allegations in the bill are not sustained; and as there is no averment of want of due discretion on the part of the respondents in the discharge of their duties as trustees under the will, there is no ground for the further prosecution of this suit.

*Bill dismissed.*